In the Matter of the REINSTATEMENT OF Scott William KATZ to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 3785.

Supreme Court of Oklahoma.

Dec. 8, 1992.

Scott William Katz, pro se.

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, OK, for respondent Oklahoma Bar Ass'n.

HODGES, Vice Chief Justice.

On June 26, 1986, the applicant, Scott William Katz, was disbarred from the Florida State Bar for three years. On August 13, 1986, the Florida Supreme Court issued an order of disbarment for three years. The record does not show whether the second disbarment ran concurrently with the first. Also the record does not show Katz' current standing with the Florida State Bar.

In the Florida Supreme Court's order of disbarment, it agreed with the referee's findings that:

2. In Count I, he [Katz] must be presumed to have divulged secrets of his client's to the client's adversary.

3. In Count II, he outrageously and successfully pressured his client to wrongfully agree to pay him money when his client had no legal obligation to do so. Certainly moral extortion if nothing else.

4. He deliberately lied under oath to a Federal Judge who relied upon such falsehood in issuing the order....

Based on the Florida disbarment proceedings, disbarment proceedings were initiated in Oklahoma. After this Court issued a show cause order to which Katz failed to timely respond, an order issued on August 13, 1986, disbarring the applicant from the practice of law and ordering his name be struck from the roll of attorneys in Oklahoma.

On July 29, 1988, Katz filed a petition for reinstatement with this Court. On September 20, 1989, this Court issued an order dismissing the petition. The order cited rule 11.1(e) of the Rules Governing Disciplinary Proceedings, Okla.Stat. tit. 5, ch. 1, app. 1–A (1981), and stated that the "[a]pplication for reinstatement after disbarment shall not be permitted within five (5) years following the effective date of the disbarment order."

On April 16, 1990, Katz asked the Oklahoma Bar Association (OBA) to ascertain the date upon which he could apply for reinstatement. The OBA responded that Katz would not be eligible for reinstatement until February 19, 1992, and quoted rule 11.1(e) in the response.

On June 10, 1991, Katz requested that the OBA send him the forms for his reinstatement. The OBA once again responded that he would not be eligible to apply for reinstatement before February 19, 1992.

Even after this Court's order dismissing his petition for reinstatement and two letters from the OBA, Katz prematurely submitted another petition for reinstatement on December 23, 1991. He stated under case law he could file the petition before February 19, 1992. Katz has continually repeated this argument. However, he has yet to cite any supporting authority. On February 24, 1992, this Court again dismissed Katz' petition as premature.

In March 1992, Katz filed a Verified Petition for Reinstatement which is the basis of these proceedings. On June 1, 1992, a hearing was held before the Professional Responsibility Tribunal (PRT). About 10:10 a.m., the PRT recessed for a short break and announced it would resume at 10:15 a.m. When the PRT resumed at 10:15, Katz had left the hearing without informing the panel and did not return.

The PRT graciously allowed Katz to submit an explanation for his leaving the hearing and any additional facts. The PRT did not make its report until after Katz had responded. In its report, the PRT found that Katz had not met his burden of proof for reinstatement. We agree.

An applicant for reinstatement must prove by clear and convincing evidence that "the applicant's conduct will conform to the high standards required of a member of the Bar." Rule 11.4, Rules Governing Disciplinary Proceeding, Okla.Stat. tit. 5, ch. 1, app. 1–A (1991). "An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time." *Id.*

The PRT is required to make the following specific finding: (1) whether the applicant possesses good moral character, (2) whether the applicant has engaged in the unauthorized practice of law during the period of disbarment, and (3) whether the applicant has maintained the necessary level of competence. *Id.* at Rule 11.5. The PRT found: (1) Katz had not met his burden of proof in showing he possessed good moral character; (2) It was unnecessary to determine if Katz had engaged in the unauthorized practice of law since he had not complied with the Rules Governing Disciplinary Proceedings; and (3) Katz had not shown that he was competent.

 The only evidence that Katz presented that he possessed good moral character was his own testimony. This alone is insufficient to establish by clear and convincing evidence that Katz is possessed with good moral character. *See In re Reinstatement of Floyd*, 775 P.2d 815 (Okla.1989); *In re Reinstatement of Cook*, 772 P.2d 918 (Okla.1989); *In re Reinstatement of Elias*, 759 P.2d 1021 (Okla.1988); *In re Application of Daniel*, 315 P.2d 789 (Okla.1957). In fact the overwhelming evidence was that Katz does not possess the requisite moral character.

After Katz filed his petition for reinstatement, the OBA, as part of the investiga-

tion, sent notices to take the depositions of several witnesses. After the notices to take the depositions were sent, Katz sent several of the witnesses letters. In the letters, he stated:

> You are hereby notified that you should bring your lawyer with you to the deposition scheduled on Wednesday, April 28, 1992. I have a full file on you which clearly shows either misconduct on your part or on the part of some of your employees.
>
> . . . . .
>
> Furthermore, if you commit perjury or admit to improper conduct involving any of the cases which I have been involved with you in the past, I will file suit against you.
>
> . . . . .
>
> In short, you should be prepared to discuss a lot of matters which relate to your misconduct and which relate to your illegal and unethical conduct. Hopefully, after all is said and done, you will be removed from office or you will be disbarred from the practice of law.

We find these letters to be intimidating and an attempt to discourage the witnesses from testifying.

Even after Katz' attempts to discourage the witnesses from testifying, several testified that they did not believe that he should be reinstated to the practice of law. Mr. Daniel Bakst, an attorney in bankruptcy; Mr. Winton J. Patterson, chief investigator for the Florida State Attorney's Office; Mr. Michael Loffredo, Special Agent Supervisor with the Florida Department of Law Enforcement; Judge James Thomas Carlisle, Circuit Judge in Florida; Judge Richard Burk, Circuit Judge of the Fifteenth Judicial Circuit in and for the Palm Beach County, State of Florida; Judge Jack Cook, Circuit Court Judge in the Fifteenth Judicial Circuit for the State of Florida; and Judge Edward Fine, a Circuit Judge in Palm Beach County, Florida, all testified that in their opinions Katz should not be reinstated to the practice of law. Not one witness testified that Katz had the good moral character necessary for reinstatement.

■ The PRT found that it was unnecessary to determine if Katz had engaged in the unauthorized practice of law because he had failed to comply with rule 11.1 of the Rules Governing Disciplinary Proceedings. During the period that Katz was disbarred, he was arrested and pled no contest to a charge of "practicing law while disbarred." Katz testified that he had not engaged in the unauthorized practice of law during his disbarment. Katz has represented himself and his own interests in at least sixteen lawsuits since his disbarment. Like the PRT, we find it unnecessary to make a finding that this conduct constituted the unauthorized practice of law because Katz did not comply with the Rules Governing Disciplinary Proceedings by demonstrating by clear and convincing evidence that he had not engaged in the unauthorized practice of law.

Rule 11.1 requires that an applicant for reinstatement submit "affidavits of the court clerks in the several counties in which he has resided, establishing that the applicant has not practiced law in their respective courts" during the disbarment. Katz submitted an affidavit from a court clerk in Arkansas. However, although Katz has resided in Palm Beach County, Florida, he has not submitted an affidavit from that county's court clerk. In fact, that court clerk refused to sign such an affidavit. No other evidence was presented to show that Katz had not engaged in the unauthorized practice of law during his disbarment. Therefore, Katz has not shown by clear and convincing evidence that he has not engaged in the unauthorized practice of law during the relevant time period.

The PRT also found that Katz had not maintained the necessary knowledge and competence to practice law. This finding is used to determine whether an applicant must take the bar examination after it has been determined that he possesses the necessary standards for readmission. Therefore, we need not address this factor.

In addition to the factors considered by the PRT, this Court will consider the fol-

lowing in determining whether an applicant should be reinstated:

[1] the petitioner's demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, [2] the extent of petitioner's rehabilitation, [3] seriousness of the original misconduct, [4] conduct subsequent to discipline, [5] the time which has elapsed since the original discipline, [and] [6] the Petitioner's character, maturity, and experience at the time of disbarment....

*In re Reinstatement of Floyd,* 775 P.2d 815, 816 (Okla.1989).

 The seriousness of the original misconduct and the time which has elapsed since Katz' disbarment were discussed above. There was no evidence presented as to Katz' character, maturity, and experience at the time of disbarment.

Katz did not present any evidence that he regretted his misconduct. The evidence is to the contrary. The Florida Supreme Court's order of disbarment shows that he attempted to justify his conduct and that he felt that he had done nothing wrong.

The evidence of the extent of petitioner's rehabilitation, or in this case, lack thereof, and Katz's conduct subsequent to discipline are intertwined and will be discussed together. Katz filed several petitions for reinstatement prematurely. At least one of which was filed after the Court issued an order stating that an application could not be filed until five years had lapsed after the disbarment.

Since his disbarment, Katz has been held in contempt on several occasions. By his own admission, he willfully violated an order of a federal bankruptcy judge because he did not consider him a judge.

Katz was sanctioned under rule 11 of the Federal Rules of Civil Procedure for filing a meritless motion filled with "scandalous, libelous, and impertinent matters." *See Katz v. Looney,* 733 F.Supp. 1284, 1287–88 (W.D.Ark.1990). In addition, rather than appealing the adverse ruling, Katz has instead sued the judge making the ruling.

He sued the chief of police who arrested him for trespassing on property a court had ordered Katz to not go on. These acts show that he has not been rehabilitated and continues to show disrespect for the legal system and the courts.

It is this Court's finding that the applicant, Scott William Katz, does not possess the necessary qualifications to be reinstated to the practice of law in Oklahoma. Therefore, the Petition for Reinstatement is denied.

The OBA has filed a motion to assess costs of $1,873.45. In his Petition for Reinstatement, Katz has agreed to "pay the fees and expenses of investigation in processing this Petition as yet to be determined by the Professional Responsibility Tribunal, including the cost of the original and one copy of the transcript of any hearings held in connection with said petition...." Pursuant to rule 11.1(c) to the *Rules Governing Disciplinary Proceedings,* the applicant is responsible for paying the expenses of the investigation and processing the application. He is also responsible for the costs of the original and *one* copy of the transcript. The application shows a bill of $549.00 for the original and two copies of the transcript. Because the applicant is responsible for the costs of the original and only one copy, we find that Katz is responsible for $366.00 of that expense. The applicant is hereby ordered to pay $1,690.45 for the costs of these proceedings within sixty days from the date that this order becomes final.

PETITION FOR REINSTATEMENT DENIED; APPLICANT ORDERED TO PAY COSTS.

All the Justices concur.